itChristopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
chrisr@prato-reichman.com
justinp@prato-reichman.com

Attorneys for Class and Named Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN, individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>  vs.<br><br>QUONTIC BANK, QUONTIC BANK HOLDINGS CORPORATION,<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br><br>**Jury Trial Demanded** |

Plaintiff PAUL SAPAN ("Plaintiff"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge. Plaintiffs bring this

action for injunctive relief and damages against Defendant, and each of them, demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff at all times herein mentioned was a resident of the County of San Diego, State of California.

2. Defendant QUONTIC BANK is, and at all times herein mentioned was, a federally chartered community bank, headquartered in the State of New York, FDIC# 57807, doing business in the County of Orange, State of California.

3. Defendant QUONTIC BANK HOLDINGS CORPORATION is, and at all times herein mentioned was, a Savings and Loan Holding Company incorporated in the state of Delaware and headquartered in the State of New York, FDIC# 57807, doing business in the County of Orange, State of California.

4. Defendant QUONTIC BANK is 100 percent owned by QUONTIC BANK HOLDINGS CORPORATION (they will be referred to herein collectively as "Quontic").

5. Quontic also has locations in the Indianapolis, Indiana area as well as potentially other locations in the United States, and such locations are doing business in County of Orange, State of California.

6. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. ("TCPA"). The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012).

7. At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the

scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

8. At all times herein mentioned each employee, representative, officer, director, or consultant of any Defendant was acting as its agent.

## NATURE OF THE ACTION

9. Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following two sub-class of persons:

Sub-Class 1:

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendants and/or their agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from April 21, 2018 to the present, including up to and through trial, and*

Sub-Class No. 2

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they had had a phone number subscribed to a residential tariff and who claim Defendants and/or their agents transmitted a call to sell financial services using a prerecorded voice to said number without prior express written consent from the called party at any time from April 21, 2018 to the present, including up to and through trial; and,*

- 3 -

Complaint

10. The TCPA was passed in order to regulate telemarketing by prohibiting, *inter alia*:

    a) phone calls to numbers on the federal Do Not Call Registry run by the Federal Trade Commission (47 U.S.C. § 227(b)(1)(B)) ; and

    b) prerecorded calls to residential lines in the absence of prior express written consent obtained from the target before making the calls. (47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(c)).

11. Quontic is engaged in a scheme to sell financial consultation services and/or mortgage services via cold calls using prerecorded voice telemarketing, often to residential phone numbers on the protected federal Do Not Call Registry which Quontic calls without prior express written consent.

12. Thus, Quontic is engaging in making illegal telemarketing calls prohibited by the Telephone Consumer Protection Act of 1991 ("TCPA"), which gives victims of junk calls a private right of action to sue for the intrusion on their privacy.

13. The modus operandi is the same for all the calls in this case, Quontic, either directly or through the use on an agent at the direction of Quontic calls various numbers in the United States with prerecorded voice software to sell Quontic's financial services.

14. Quontic and/or its agent do not check the federal Do Not Call Registry before making these calls nor engage in any Do Not Call Registry compliance.

15. If a person, such as the Plaintiff, answers the call they will hear a robotic prerecorded artificial voice which will make a quick sales pitch and prompt them to "press 1" to continue.

16. If the person presses 1 to continue, they will be immediately connected during the call with a live agent who will continue the sales pitch, and

who will during the call bring a direct Quontic employee or representative on the line to finish the sales pitch.

17. Plaintiff alleges on information and belief that Quontic is aware of the use of a robotic prerecorded artificial voice as it is either making such calls directly or directing an agent to use such methods for telemarketing.

18. Alternatively, Plaintiff alleges on information and belief Quontic is willfully ignorant of the use of a robotic prerecorded artificial voice in the calls.

19. These cold calls are made to massive lists of phone numbers in the United States with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not.

20. Quontic has intentionally violated the TCPA in a so-far successful attempt to sell financial and/or mortgage packages for years.

## FACTUAL DETAILS RE NAMED PLAINTIFF

21. Defendants made four (4) calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch their financial services on the following dates and times and using the following Caller ID ("CID") numbers and Caller ID name ("CNAM"):

- June 3, 2019, 8:00 am, CID 323-641-4354, CNAM [none].
- June 12, 2019, 12:41 pm, CID 317-315-1716, CNAM "Quontic Bank"
- June 12, 2019, 12:41* pm, CID 317-315-1716, CNAM "Quontic Bank" (second call during same one-minute interval)
- June 17, 2019, 9:16 am, CID 317-315-1716, CNAM "Quontic Bank"

22. Mr. Sapan made a log of all the calls he received from Quontic during or shortly after receiving the calls which includes the date and time of the call and the Caller ID information all, and which is attached hereto as Exhibit 1 and incorporated herein as if set forth verbatim.

23. Mr. Sapan's residential line has been tariffed as a residential line since he was assigned it by the phone company and it has been continuously registered on the National "Do-Not-Call" Registry from at least December 22, 2007 to the present.

24. Mr. Sapan never gave any Quontic or any other person, agent, employee or entity associated with Quontic express written permission to call him, nor does he have an established business relationship nor personal relationship with Quontic or any other person, agent, employee or entity associated with Quontic.

25. In just a short one-month time span from June 3, 2019 to June 17, 2019, Quontic transmitted four (4) telemarketing calls to Mr. Sapan's residential phone (310-444-1999) to try to sell its services.

26. All but the first call used the same Caller ID Number 317-315-1716 and the caller ID name was Quontic Bank. (Ex. 1)

27. During the first call on June 3, 2019 Quontic used Caller ID Number 323-641-4354 with no Caller ID Name and Mr. Sapan answered the call, listened to the prerecorded sales pitch from "Jenny" of the rather vaguely named "Mortgage Advisors" telling him about their program to pull equity out of his house.

28. Since there is no company called "Mortgage Advisors" and Mr. Sapan knew that junk telemarketers constantly use vague and generic faked company names to introduce their pitches in order to evade detection and liability for illegal calling, Mr. Sapan decided to play along to determine who this really was.

29. Mr. Sapan pressed 1 solely to determine who was calling.

30. After pressing "1" to try to determine who was calling, a person saying her name was "Samantha" with the same vague and generic "Mortgage Advisors" came on the line to continue the sales pitch and ask Mr. Sapan some qualifying questions.

31. Mr. Sapan answered the questions and then "Samantha" brought a person on the line who said his name was "Jason" and who finally admitted the truth and said he was with "Quontic Bank" and he then tried to sell Mr. Sapan on pulling equity from his home.

32. Mr. Sapan, in order to confirm the identity of the company calling, asked "Jason" where he was calling from.

33. "Jason" said he was in Indianapolis and, having gotten enough information, Mr. Sapan thereafter told "Jason" he was not interested in the services and to not call him again.

34. Quontic has an office located in Carmel, Indiana, a suburb of Indianapolis.

35. Quontic transmitted the next call to Mr. Sapan on June 12, 2019 at 12:41 pm using CID Number 317-315-1716 and the Caller ID name "Quontic Bank".

36. Mr. Sapan was busy and did not answer this call.

37. Quontic transmitted another call to Mr. Sapan less than a minute afterwards on June 12, 2019 again at 12:41 pm using the same CID Number 317-315-1716 and Caller ID Name "Quontic Bank", which Mr. Sapan answered, but there was no one on the line.

38. Plaintiff pleads on information and belief that the call he answered on June 12, 2019 could not connect because of a glitch in the prerecorded artificial voice call software being used by Quontic.

39. Finally, on June 17, 2019 Quontic transmitted a call to Mr. Sapan using the same Caller ID Number 317-315-1716 and Caller ID Name "Quontic Bank".

40. Mr. Sapan was busy and did not answer this call.

41. Plaintiff pleads on information and belief that "Mortgage Advisors" is a false and faked name, and it is either a name being used by Quontic directly, or

alternatively is a fake name used by an agent hired by Quontic to make illegal telemarketing calls at the direction and control of Quontic.

42. Plaintiff pleads on information and belief that "Samantha" whom he spoke with on June 3, 2019 is an employee directly for Quontic, or in the alternative is an employee of agent of Quontic making illegal telemarketing calls at the direction and control of Quontic.

43. Plaintiff pleads on information and belief that to the extent Quontic relies on any agent or other entity to make prerecorded telemarketing calls on its behalf, Quontic has direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent.

44. Alternatively, Plaintiff pleads on information and belief that to the extent Quontic relies on any agent or other entity to make prerecorded telemarketing calls on its behalf, Quontic hired that agent to interact with the public on Quontic's behalf and therefore gave implied authority to represent Quontic.

45. Alternatively, Plaintiff pleads on information and belief that Quontic ratified the making prerecorded telemarketing calls on its behalf by its agents, including "Samantha", by knowing of the illegal conduct and failing to repudiate the conduct.

46. Plaintiff alleges that since June of 2019 to present Defendant may have made more violative calls to Plaintiff's residential line that he was unable to log or identify at the time and expressly includes claims for them herein even though the specifics of the dates and times are unknown at this time without the aid of discovery.

## **LIABILITY OF QUONTIC BANK**

47. In the first call received by Mr. Sapan on June 3, 2019 Mr. Sapan spoke with at least one person who was a direct employee of Quontic, who

confirmed that he worked for "Quontic Bank" and gave his location as Indiana where quontic bank has an office.

48. In all of the remaining calls from the Caller ID Number, 317-315-1716 the Caller ID Name transmitted to Mr. Sapan's phone expressly stated "Quontic Bank".

49. Additionally, the 317 area code is for Indianapolis, Indiana, where QUONTIC BANK has one of its few physical offices.

50. Plaintiff pleads on information and belief that the officers, managers and employees for QUONTIC BANK knew about the illegal telemarketing calls as alleged above and in fact ordered such calls to be made.

## LIABILITY OF QUONTIC BANK HOLDINGS CORPORATION

51. QUONTIC BANK HOLDINGS CORPORATION is the 100 precent owner of QUONTIC BANK.

52. Additionally, QUONTIC BANK HOLDINGS CORPORATION owns the copyright to QUONTIC BANK's name and website.

53. QUONTIC BANK is a digital bank, so any business being done on QUONTIC BANK's website is conducted though QUONTIC BANK HOLDINGS CORPORATION as the copyright holder of the website.

54. Plaintiff pleads on information and belief that QUONTIC BANK HOLDINGS CORPORATION in fact functions as QUONTIC BANK and any legal paperwork separating the two is a mere legal fiction, and in fact QUONTIC BANK HOLDINGS CORPORATION and QUONTIC BANK are for all practical purposes the same company.

55. Plaintiff pleads on information and belief that QUONTIC BANK HOLDINGS CORPORATION is more than just a mere holding company for

QUONTIC BANK and in fact it has direct control over QUONTIC BANK including ordering QUONTIC BANK to make the illegal telemarketing phone calls alleged in this complaint.

56. Plaintiff pleads on information and belief that the officers, managers and employees for QUONTIC BANK HOLDINGS CORPORATION knew about the illegal telemarketing calls being made as alleged above and in fact ordered such calls to be made.

## FINAL LIABILITY ALLEGATIONS

57. Plaintiff pleads on information and belief that to the extent Quontic uses any agents to make calls, Quontic has orders their agent to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry for its benefit.

58. Plaintiff pleads on information and belief that to the extent Quontic uses any agents to make calls, Quontic has orders their agent to make the illegal telemarketing calls using prerecorded voice to residential phone lines for its benefit.

59. Plaintiff pleads on information and belief that to the extent Quontic uses any agents to make calls, Quontic knew or reasonably should have known (implied agency), that its agents were was making the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry and using prerecorded voice calls to residential numbers.

60. Plaintiff pleads on information and belief that to the extent Quontic uses any agents to make calls, Quontic explicitly condoned the actions of such agents in making the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry and using prerecorded voice calls to residential numbers for its benefit by condoning their actions afterwards.

61. Plaintiff pleads on information and belief that to the extent Quontic uses any agents to make calls, Quontic explicitly hired by such agent in order to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry and to use prerecorded voice calls to residential numbers for the benefit of Quontic.

## ACTUAL HARM & WILFUL AND KNOWING CONDUCT

62. The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that no telemarketer may call any number registered on the National "Do-Not-Call" Registry without prior express consent or a prior established business relationship.

63. Defendant has intentionally violated the TCPA in a so-far successful attempt to sell financial and mortgage related services.

64. Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the call itself, the indirect waste of time in having to break from other important tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

65. Plaintiff has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

66. During each of Defendant's calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendant.

67. As a proximate result of these intrusions, Plaintiff suffered and invasion of his privacy because the call should never have been transmitted to him and rang his private phone at his private residence.

68. Plaintiff alleges on information and belief that Defendant made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

69. Plaintiff alleges on information and belief that Defendant made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

## CLASS ACTION ALLEGATIONS

70. **Description of the Class**: Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

Sub-class 1:

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from April 21, 2018 to the present, including up to and through trial.*

Sub-class 2

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they had had a phone number subscribed to a residential tariff and who claim Defendant and/or their agents transmitted a call to sell financial services using a prerecorded voice to said number without prior express written consent from the called party at any time from April 21, 2018 to the present, including up to and through trial; and,*

71. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant have a controlling interest, and Defendant' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

72. Plaintiffs reserve the right to modify the Class description and the Class period based on the results of discovery.

73. **Numerosity**: The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of the evidence of the number of calls made by Defendant, Plaintiffs believe that the total number of Class members is at least in the tens of thousands and members and the members are geographically dispersed across California and the United States.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendant' call records.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

74. **Common Questions of Law and Fact Predominate**: There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

    a. Whether Defendant transmitted two or more sales calls in any one calendar year to numbers on the National "Do-Not-Call" Registry.

    b. Whether Defendant transmitted calls using a prerecorded artificial voice to residential phone lines.

    b. Whether Defendant transmitted these calls without prior express consent from the owners of those lines or a business relationship with them established before the calls were made.

    c. Whether the transmission of these calls was done willfully or knowingly by Defendant.

    d. Whether agency relationships giving rise to TCPA liability exist amongst and between Defendant and its agents.

75. **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class have been similarly affected by Defendant' common course of conduct since Defendant' have repeatedly called the Class to sell their financial products.

76. **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with experience in handling complex litigation who has been previously certified as class counsel. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

77. **Superiority of a Class Action**: Plaintiffs and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

78. Adjudication of individual class member's claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION: TCPA VIOLATION
## CALL TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY
### (On Behalf of the Plaintiff Class)

79. Plaintiffs reallege all paragraphs above and incorporates them herein by reference.

80. Plaintiffs are bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

81. Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations."

82. At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

83. Defendant have called Plaintiff's residential telephone line for solicitation purposes at least twice during a calendar year during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

84. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the National "Do-Not-Call" Registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief or Plaintiff may recover up to $500.00 for each violation, or both. If the court finds that Defendant' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

## SECOND CAUSE OF ACTION: TCPA VIOLATION
## PRERECORDED TELESOLICITATION TO A RESIDENTIAL NUMBER
### (On Behalf of the Plaintiff Class)

85. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

86. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

87. Subdivision (b) (1) (B) of Section 227 of Title 47 of the United States Code makes it unlawful for any person to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order of the Commission under paragraph (2) (B);"

88. Defendants have called Plaintiff's residential telephone line, using an artificial or prerecorded voice to deliver a message, without Plaintiff's express permission during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's

residential telephone line. These calls were not made for any emergency purpose, nor were these calls exempt under subdivisions (a) and/or (c) of section 64.1200 of title 47 of the Code of Federal Regulations.

89. Subdivision (b)(3) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations of 47 U.S.C. §227 (b)(1) (B). Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both. If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiffs pray for judgment against Defendant, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227(c)(2);
2. For an award of $500.00 for each violation of 47 U.S.C. § 227(b)(1)(B)
3. For an award of $1,500.00 for each such violation found to have been willful;

On ALL CAUSES OF ACTION:

4. For attorney's fees pursuant to all applicable federal and state statutes;
5. For costs of suit herein incurred; and
6. For such further relief as the Court deems proper.

DATED: April 21, 2022                                    **PRATO & REICHMAN, APC**

/s/Christopher J. Reichman, Esq.
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff,
Paul Sapan